UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nada Saab,

    Plaintiff,

v.                                                            Case No. 07-10845

Rev. Jimmy Womack, *et al.*,                  Honorable Sean F. Cox

    Defendants.
_____/

## **OPINION & ORDER**

Plaintiff is a former employee of the Detroit Public Schools who filed her *pro se* complaint against 17 named defendants and 33 unidentified "john doe" defendants on February 26, 2007. The named Defendants are various members of the Detroit Board of Education and other individuals that Plaintiff worked under during the course of her employment as a Limited License Instructor, and later as a probationary contract teacher. The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on January 17, 2008. For the reasons below, the Court shall GRANT Defendants' motion.

## **BACKGROUND**

Plaintiff Nada Saab ("Plaintiff" or "Saab") is a female of Lebanese decent. (Pl.'s Br. at 1). Plaintiff was hired by the Detroit Public Schools ("DPS") as a Limited License Instructor ("LLI") on or about December 13, 2003. (*Id*.). The LLI program was a partnership between Wayne State University and DPS whereby an individual was allowed to teach at DPS without a

1

teaching certification if she was accepted and enrolled in the LLI program, and engaged in completing a university-approved teacher certification Plan of Work. After a participant completed the LLI program, they were hired by DPS as a contract teacher. (Defs.' Br. at 1; Defs.' Ex. 3, CBA, at 49-51).

During Plaintiff's status as an LLI instructor, she was directly supervised by the science curriculum leader, Defendant Julie Wolf ("Wolf"), a Caucasian female.

Plaintiff completed the LLI program on August 3, 2005, and was reassigned as a contract teacher with probationary status on August 13, 2005. Although Plaintiff desired to teach only chemistry classes, due to the school's needs, she was assigned to teach both chemistry classes and integrated natural science ("INS") classes. Plaintiff continued to have interaction with Wolf during her probationary status. Plaintiff's complaint contains numerous allegations relating to Wolf and others, including that Plaintiff was assigned to "a messy classroom" and that Plaintiff was improperly observed by supervisors during the month of October 2005, while she was teaching an INS class.

On November 21, 2005, Plaintiff's union, the Detroit Federation of Teachers, filed a "Step 2 grievance" on behalf of Plaintiff, asserting that Plaintiff should not have been observed teaching a subject that she is not certified to teach. (Defs.' Ex. 21; Pl.'s Br. at 2). The CBA provides for a multi-step grievance procedure that culminates with binding arbitration. (*See* Defs.' Ex. 3 at 73). Defendant Gordon Anderson ("Anderson"), who Plaintiff claims is an arbitrator, conducted hearings regarding the Step 2 grievance, but it is undisputed that he did not render a decision under the time frame specified in the CBA. (Pl.'s Br. at 2).

Under the CBA, if a decision is not rendered in the time frame provided for that step of

the process, then the next step in the process can be pursued within the time allotted had the decision been made. (Ex. 3 to Defs.' Br. at 74). Defendants state, and Plaintiff has not disputed, that Plaintiff's union failed to appeal to the next stage of the grievance procedure or to submit Plaintiff's grievance to final and binding arbitration when no decision was rendered by the DPS. (Defs.' Br. at 3).

Plaintiff took FMLA leave from April 24, 2006 to June 16, 2006. (Ex. 24 to Defs.' Br.). Defendants state that Plaintiff did not return to work prior to the end of the school year. Plaintiff resigned her employment with the DPS on September 2, 2006, prior to the beginning of the next school year. (Ex. 25 to Def.'s Br.).

Meanwhile, while on her FMLA leave, Plaintiff filed an EEOC Charge on May 26, 2006. In her EEOC charge, Plaintiff alleged that she was discriminated against on the basis of her national origin during the period from October 6, 2005, to January 12, 2006. (Ex.26 to Defs.' Br.).

Plaintiff received a Right to Sue letter from the EEOC on November 29, 2006. (Ex. 28 to Defs.' Br.). Plaintiff then filed this action on February 26, 2007. This Court has subject matter jurisdiction over this action because Plaintiff has asserted federal claims. 28 U.S.C. § 1331.

Plaintiff's *pro se* complaint, filed under 28 U.S.C. § 1983, appears[1] to allege the following federal claims:

- Employment Discrimination: Plaintiff alleges that, in violation of Title VII, Defendants discriminated against her based upon her national origin. Plaintiff appears to assert both a disparate treatment claim and a hostile work environment claim.

- Due Process Violations: Plaintiff alleges that Defendants violated her constitutional right

---

[1]The complaint is not organized into separate claims or counts.

to due process. Plaintiff alleges that she was denied both procedural and substantive due process.

It also appears that Plaintiff's complaint contains the following claims, that are asserted under state law:

- <u>Gross negligence</u>: Plaintiff alleges "gross negligence by all of the named individuals." (Compl. at 2).

- <u>Breach of Contract</u>: Construed broadly, Plaintiff's complaint alleges that Defendants breached the CBA.

The following named Defendants in this action are current or former members of the Detroit Board of Education:

1. Rev. Jimmy Womack;
2. Joyce V. Hayes-Giles;
3. Rev. David Murray;
4. Jonathan Cleveland Kinloch;
5. Carla D. Scott;
6. Annie Carter;
7. Tyrone Winfrey;
8. Ida Short;
9. Paula Johnson;
10. Marvis Cofield;
11. Marie L. Thronton; and
12. William F. Coleman.

(Compl. at 1)("the Board Member Defendants"). Plaintiff's complaint does not allege that any of the Board Member Defendants had any personal involvement with the events underlying her complaint. During her deposition, Plaintiff indicated that she sued the Board Member Defendants simply because of their status as Board Members. (Pl.'s Dep. at 69-70). Nevertheless, Plaintiff's complaint indicates that she is suing each of the Board Member Defendants, and all other Defendants in this action, in both their individual and official capacities.

Plaintiff testified that she named Lauri Washington ("Washington") as a Defendant in this action simply because Washington responded to the EEOC on behalf of the DPS. (Pl.'s Dep. at 70).

Plaintiff testified that she named Anderson, the individual who held hearings related to her Step 2 grievance but did not render a decision, because "he never made the ruling." (Pl.'s Dep. at 71).

Plaintiff's complaint identifies Defendant Naddine Tibbs-Stallworth ("Tibbs-Stallworth") as an administrative official who observed Plaintiff's probationary teaching at some point during the month of October, 2005. (Pl.'s Compl. at ¶ 14).

Plaintiff testified that she named Defendant Brenda Gatlin ("Gatlin") as a defendant in this action because Gatlin was the principal and "was aware of everything." (Pl.'s Dep. at 72). Plaintiff's complaint alleges that Gatlin did not express concern or interest regarding Plaintiff's teaching skills, qualifications and development. (Compl. at ¶ 9). Her complaint further alleges that Gatlin "did not resolve the situation" when Plaintiff was unable to meet with her assigned mentor due to a conflict in Plaintiff's schedule and her mentor's schedule. (*Id*. at 18).

Standard of Decision

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the

affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

**ANALYSIS**

A.    <u>Plaintiff's Employment Discrimination Claims:</u>

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his or her discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Here, Plaintiff has not presented the Court with any direct evidence of discrimination. She must therefore rely on circumstantial evidence.

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To demonstrate a prima facie claim of race discrimination, the plaintiff must show that 1) she was a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was treated differently than similarly-situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them.

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

If plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc, supra.* A plaintiff establishes pretext by showing that the reason offered by the defendant: 1) has no basis in fact; 2) did not actually motivate the decision; or 3) was insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Defendants assert that Plaintiff cannot establish a prima facie case of discrimination because: 1) Plaintiff cannot establish that any adverse action was taken against her and 2) she cannot identify any similarly situated non-protected employees who were treated differently than she was for the same or similar conduct. With respect to the adverse action element, Defendants state that Plaintiff never received a termination, demotion, decrease in salary, less distinguished title, loss of benefits or diminished responsibilities so as to amount to an adverse action being taken against her.

Defendants also assert that even if Plaintiff could establish a prima facie case of discrimination, Defendants have a legitimate non-discriminatory reason for the actions taken and Plaintiff cannot establish that such reasons are a pretext for discrimination.

In response to Defendants' position that she cannot establish that any adverse action was taken against her, Plaintiff states that numerous adverse actions were taken against her and she lists them, numbered A through N, on pages 7 through 10 of her brief. Plaintiff provides no legal

authority to support her position that such actions constitute adverse actions that could support a Title VII claim.

In response to Defendants' position that she cannot identify any similarly situated non-protected employees who were treated differently than Plaintiff for the same or similar conduct, Plaintiff states that she "has been treated differently from similarly situated individuals in that Plaintiff was observed and evaluated in INS classes when in fact Plaintiff hold certifications to teacher [sic] Chemistry (DC) and Physics (DE)." (Pl.'s Br. at 12). Notably, Plaintiff does not identify a single individual whom she believes was treated more favorably than her by Defendants, nor does she present the Court with any evidence regarding same. Rather, Plaintiff claims that Defendants "have not conducted discovery in good faith." (Pl.'s Br. at 12). Specifically, Plaintiff claims that Defendants have not fully responded to her discovery directed at the issue of "to whom Plaintiff's Step 2 grievance was assigned to." (*Id.*). Plaintiff does not explain how discovery related to the assignment of her grievance could be relevant to the issue of identifying other employees being treated more favorably than Plaintiff.

The Court concludes that Plaintiff has failed to meet her burden of establishing a prima facie case of discrimination.

In her response to Defendants' motion, Plaintiff claims that she experienced the following "adverse actions:"

    A.    That her supervisor did not give her written expectations at the beginning of the 2005-2006 school year;

    B.    That her designated science supervisor had an expired teaching certificate during a portion of the time that supervised Plaintiff;

    C.    Plaintiff was not given a qualified mentor until four months after the

school year started;

D. Plaintiff was not provided timely written comments following observations of her work by Ms. Wolf;

E. Plaintiff was evaluated outside of her area of teacher certification;

F. The Detroit Federation of Teachers filed a grievance on behalf of Plaintiff seeking: 1) the unsatisfactory observation evaluation process stop; 2) that any documentation be purged from her file; and 3) Plaintiff be transferred to another high school.

G. The DPS has not yet issued a decision on the Step 2 grievance;

H. Defendants, through counsel, have made the representation that a Step 2 grievance hearing was never held;

I. Plaintiff has experienced unspecified injury to her "professional career and employment status" due "to negligence and failure of Bd. Members and other officials to follow and adhere to a wide range of policies and procedures." The only concrete action specified is that Plaintiff was not presented with a "written statement," 60 days prior to the end of the school year as required under M.C.L. § 38.83.;

J. Southeastern Principal Brenda Gatlin "did not express interest and concern about Plaintiff's teaching skills or qualifications and professional development;"

K. Defendants failed to provide a written statement to Plaintiff relating to M.C.L. § 38.83;

L. That she experienced unspecified "injury to [her] professional career and employment status as a result of the injury caused due to negligence and failure of Bd. members and other officials to follow and adhere to a wide range of policies and procedures;"

M. Brian Vosburg, Program Manager of Highly Qualified Teacher Assessment & Verification Center of DPS, indicated in an e-mail that Plaintiff "is currently not Certified nor will she be Highly Qualified by June 30, 2006 (the Federal deadline to be HQ) to teach INS." (*See* Ex. 9 to Pl.'s Br.); and

N. Plaintiff would like to ask questions of the DPS at a future hearing, including what employment reference information will be given to other schools about her experience with DPS and what Plaintiff should state to potential school district employers about the absence of a written statement relating to M.C.L. § 38.83.[2]

---

[2]Although Plaintiff does not identify being placed on an IDP as an adverse action, the Court notes that Plaintiff's EEOC complaint alleges that she was placed on an "IDP" and, as a

The Court concludes that none of the above alleged actions can be considered an "adverse action" for purposes of establishing a claim of employment discrimination under Title VII.

In order to set forth a claim of discrimination, a plaintiff must show that she has suffered an adverse employment action; that is, she must establish that she has suffered a "materially adverse" change in the terms or conditions of employment because of the employer's action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). The Sixth Circuit has explained that a materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Watson v. City of Cleveland*, 202 Fed. Appx. 844, 854 (6th Cir. 2006).

Here, Plaintiff does not allege that she was terminated, demoted, suspended, disciplined, had her wages decreased, had her title changed, lost benefits, or had her job responsibilities altered. Rather, Plaintiff's alleged "adverse actions" are: 1) a variety of relatively minor complaints about her supervisors that do not relate to any tangible employment actions having been taken against her (*e.g.*, her supervisor lacked certification for a period of time, her supervisor did not give her timely comments after observing her in the classroom, her supervisor was late in assigning her a mentor, etc.); 2) statements about actions taken by Plaintiff or inaction

---

result, she was sent to observe another teacher. An IDP is an Individual Development Plan and it appears that an IDP was developed for each teacher, including Plaintiff. (*See* Ex. 3 to Def.'s Br. at 43). The Court does not believe that being placed on an IDP, or being sent to observe another teacher as part of an IDP, could be construed as an adverse action.

of third parties (*e.g.*, Plaintiff, through her union, filed a grievance); and 3) questions about potential future actions (*e.g.*, what kind of employment reference will be given by Defendants in the future). The Court is satisfied that these alleged actions are not materially adverse and are therefore not actionable under Title VII.

The Sixth Circuit has explained that not every action taken by an employer is an adverse action that supports a Title VII claim. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999)("If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure."). "The Sixth Circuit has consistently held that *de minimus* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).

The Court also concludes that any failure of the DPS to provide Plaintiff with a written statement of whether her work has been satisfactory could not constitute an "adverse action" for purposes of establishing a Title VII claim. M.C.L. § 38.83 provides that the board is to provide, at least 60 days before the close of each school year, a probationary teacher "with a definite written statement as to whether or not his work has been satisfactory" and that "[f]ailure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuring year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued." M.C.L. § 38.83. If, as Plaintiff alleges, the DPS failed to give Plaintiff a required written statement regarding whether or not her work was satisfactory under § 38.83, that failure would actually have a *positive* impact on Plaintiff's employment status

11

because such failure would be considered conclusive evidence that Plaintiff's work was *satisfactory*.

Accordingly, the Court concludes that Plaintiff has failed to establish the second element of a prima facie case of discrimination – that she suffered an adverse employment action. The Court further concludes that Plaintiff has failed to establish the fourth element of a prima facie case – that she was treated differently than similarly situated employees for the same or similar conduct. Accordingly, Plaintiff has failed to meet her burden of establishing a prima facie case of discrimination.[3]

Moreover, to the extent that Plaintiff seeks to assert a hostile work environment claim in this action, the Court agrees that Plaintiff has failed to establish a prima facie showing of a hostile work environment claim. In order to establish a hostile work environment claim, Plaintiff must establish: 1) she is a member of a protected class; 2) she was subject to unwelcomed harassment; 3) the harassment was based on the protected class; 4) the harassment created a hostile work environment; and 5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *Bowman*, 220 F.3d at 462-63.

A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working condition. *Id.* Both an objective and subjective test must be met: the conduct must be severe or pervasive enough to create an

---

[3]Because Plaintiff has failed to establish a prima facie case of discrimination, the Court need not proceed to analyze Defendants' legitimate non-discriminatory reasons for their actions, or consider whether Plaintiff has shown such reasons to be pretextual.

environment that a reasonable person would find hostile or abusive and the victim must subjectively regard it as such. *Id*. at 463. "Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Id.* "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

The Court does not believe that the conduct alleged here by Plaintiff could constitute harassment that is severe or pervasive enough to support a hostile work environment claim. Moreover, Plaintiff has not presented any evidence to establish that the alleged actions by Defendants were based on the protected class – Plaintiff's nationality. The Court therefore concludes that Plaintiff has failed to meet her burden of establishing a hostile work environment claim.

Finally, although not addressed by either party in their briefs, Plaintiff's complaint also references retaliation. (*See* Complaint at 5)("Plaintiff has been effectively retaliated against by both DBE and arbitrator Anderson's willful negligence to issue a ruling" with respect to Plaintiff's grievance.) The Court concludes that any such claim fails because Plaintiff did not pursue a retaliation claim before the EEOC. *See Cox v. City of Memphis*, 230 F.3d 199, 201-202 (6th Cir. 2000)(Explaining that in order to recover for a discriminatory act under Title VII, a plaintiff must fist timely file a charge with the EEOC.).

The Court therefore concludes that all of Plaintiff's employment discrimination claims must be dismissed.

B.   Plaintiff's Due Process Claims:

Defendants contend that Plaintiff has not alleged a cognizable due process claim because she was not deprived of life, liberty or property. Rather, her claim is simply based on the fact that her teaching skills were observed and evaluated.[4]

Plaintiff's complaint alleges both procedural and substantive due process violations. (*See* Compl. at 2). The Court agrees that both claims must be dismissed.

"The Fourteenth Amendment says that no state may 'deprive any person of life, liberty, or property, without due process of law.' U.S. CONST. amend. XIV." *Eggers v. Moore*, 2007 WL 4462096 (6th Cir. Dec. 19, 2007). "Due process is therefore triggered by some deprivation of life, liberty or property." *Id*.

Here, Plaintiff alleges that she was improperly observed while she was employed by the DPS. Plaintiff has not alleged, however, that she suffered any deprivation of life, liberty or property because she was not terminated or disciplined during her employment. *See Eggers, supra*. Therefore, Plaintiff cannot maintain a procedural due process claim.

The Court concludes that her substantive due process claim fails as well.

---

[4]Defendants also assert additional arguments in seeking dismissal of the due process claim, including the argument that the due process provisions of the Teacher Tenure Act do not apply to Plaintiff. That additional argument need not be analyzed, however, if Plaintiff has failed to meet the threshold requirement of establishing that she suffered a legally cognizable deprivation.

14

The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come be known as substantive due process. *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). The substantive component of the Due Process Clause is violated by state action only when it can be properly characterized as conscience shocking in a constitutional sense. *Id.* Thus, "[t]o state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Eidson, supra* at *3.

Here, Plaintiff claims that Defendants' observation of her teaching was improper under the CBA and/or teaching-related rules and statutes. State-created rights such as any contractual right concerning teaching observations and evaluations do not rise to the level of fundamental interests protected by substantive due process. *Bowers*, 325 F.3d at 764. State-created contractual rights are simply not a proper subject of federal protection under the doctrine of substantive due process and therefore Plaintiff's substantive due process claim fails.

Accordingly, the Court shall grant summary judgment in favor of Defendants with respect to Plaintiff's procedural and substantive due process claims.[5]

---

[5]Defendants also argue that the Board Member Defendants are entitled to qualified immunity. When ruling on the assertion of a qualified immunity defense, the court must consider whether, taken in a light most favorable to the party asserting injury, the facts alleged show the officer's conduct violated a constitutional right. *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. Oct. 18, 2006). Here, Plaintiff does not allege that the Board Member Defendants had any role whatsoever with respect to the actions that form the basis for her complaint. Thus, there has been no constitutional violation by the Board Members and therefore they are also entitled to qualified immunity with respect to Plaintiff's § 1983 claims.

C.　Plaintiff's State Law Claims:

1.　Gross Negligence Claim:

Defendants contend that Plaintiff's gross negligence claim must be dismissed because Defendants are entitled to governmental immunity under M.C.L. § 691.1407.

The Court agrees that this claim should be dismissed because Defendants are entitled to governmental immunity.

M.C.L. § 691.1407(5) states that "A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to person or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Members of a school board are entitled to immunity under that provision. *Nalepa v. Plymouth-Canton Comm. School District*, 207 Mich.App. 580, 587 (1995). Accordingly, the Board Member Defendants are immune from Plaintiff's gross negligence claim.[6]

Michigan law also states that employees of a governmental unit are immune from a state tort claim if "(a) [t]he officer, employee, member or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority; (b) [t]he governmental agency is engaged in the exercise or discharge of a governmental function; [and] (c) [t]he officer's employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate

---

[6]Plaintiff did not include the school district as a defendant in enumerating the various defendants (numbered 1 through 50) in her complaint. (Pl.'s Compl. at 1). Nevertheless, had Plaintiff named the school district as a defendant, the school board would be immune from this claim under M.C.L. § 691.1407(1).

cause of the injury or damage." M.C.L. § 691.1407(2). Plaintiff's complaint does not allege that the remaining Defendants were acting outside of the scope of his or her authority, and there can be no dispute that the governmental agency – the school board – was engaged in the exercise or discharge of a governmental function in employing, supervising and evaluating Plaintiff as a teacher. In addition, the alleged conduct of the remaining Defendants, even if established to be true, would not constitute "gross negligence"[7] under the statute. The remaining Defendants,[8] therefore, are immune from Plaintiff's gross negligence claim.

2. <u>Plaintiff's Breach of Collective Bargaining Agreement Claim:</u>

Construing Plaintiff's *pro se* complaint broadly, Plaintiff has also alleged a claim for breach of the CBA.

Defendants' Motion for Summary Judgment asserts that "the CBA requires exhaustion of administrative remedies" and states that "any failure to follow the evaluation provisions of the CBA must be grieved and, if necessary, submitted to final and binding arbitration according to the terms of the CBA." (Defs.' Br. at 17-18).

Plaintiff does not respond to Defendants' position that she failed to exhaust her administrative remedies and therefore cannot maintain a claim for breach of the CBA in this action. It therefore appears that any breach of contract claim alleged by Plaintiff should be

---

[7]Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(2)(c).

[8]Plaintiff's complaint listed "John & Jane Doe 1-50" but contained no allegations in the complaint regarding any unidentified defendants. It alleged "gross negligence by all of the *named* individuals." (Compl. at 2)(emphasis added).

17

dismissed on this ground. [9]

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated: January 28, 2008**

**I hereby certify that on January 28, 2008, a copy of the foregoing document was served upon counsel of record by electronic means and by First Class mail upon:**

**Nada Saab**
**6987 Dacosta**
**Dearborn Heights, MI 48127**

**S/Jennifer Hernandez**
**Case Manager**

---

[9]Moreover, this appears to be a straight breach of contract claim, which is a state law claim. *See Bowers, supra*, at 764. If Plaintiff had established that her breach of contract claim is not barred for failure to exhaust administrative remedies, this Court would decline to exercise supplemental jurisdiction over this state law claim, having dismissed all of Plaintiff's federal claims.